UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JUANITA STOCKWELL, et al.,

    Plaintiffs,

    v.

CITY AND COUNTY OF SAN FRANCISCO,

    Defendant.

_____/

No. C 08-5180 PJH

**ORDER DENYING MOTION FOR CLASS CERTIFICATION**

Plaintiffs' motion for class certification came on for hearing before this court on June 16, 2010. Plaintiffs Juanita Stockwell ("Stockwell"), Michael Lewis ("Lewis"), Terrye Ivy ("Ivy"), and Vince Neeson ("Neeson"), on behalf of the putative plaintiff class, and 35 other individual named plaintiffs (collectively "plaintiffs"), appeared through their counsel Michael S. Sorgen. Defendant City and County of San Francisco (the "City" or "defendant") appeared through its counsel, Jonathan Rolnick. Having read the parties' papers and carefully considered their arguments and the relevant legal authority, and good cause appearing, the court DENIES plaintiffs' motion for class certification, for the reasons stated at the hearing, and as follows.

**BACKGROUND**

This action arises out of allegations of age discrimination in employment. Named representative plaintiffs Stockwell, Lewis, Ivy, and Neeson bring this action on behalf of a putative class of similarly situated individuals who worked for the San Francisco Police Department ("SFPD") and were allegedly denied advancement opportunities because of their age. The complaint also names 35 other individual plaintiffs who qualify as class members, but who bring suit in their individual capacities.

The original action was filed on November 17, 2008. One month later, plaintiffs filed an amended complaint. In April 2010, plaintiffs moved for leave to supplement the amended complaint, and on April 7, the court granted plaintiffs' motion. A further amended complaint was duly filed on April 20, 2010. This amended complaint is the operative complaint on file. See Class Action Complaint for Injunctive and Declaratory Relief, Docket No. 54 ("Amended Complaint").

The Amended Complaint generally alleges that the named plaintiffs – as well as the 35 individual plaintiffs – were all SFPD officers over the age of 40 with extensive investigative and other work experience who were improperly denied certain promotion and advancement opportunities. See Amended Complaint, ¶¶ 1-4. Specifically, plaintiffs allege that they all took and passed SFPD's test for Q-35 Assistant Inspector, and were placed on the Q-35 Assistant Inspector eligibility list for assistant inspector positions with the SFPD's Investigations Bureau. Id., ¶ 6; see also Declaration of Jonathan Rolnick ISO Cert. Opp ("Rolnick Decl."), ¶ 3, Ex. C. Plaintiffs further allege, however, that defendant's department-wide policies and practices with respect to the SFPD's distribution of promotional opportunities systematically deny qualified older officers equal opportunities for promotion and compensation. Amended Complaint, ¶¶ 15-16. As a result, and notwithstanding their positions on the Q-35 Assistant Inspector eligibility list, plaintiffs allege they were passed over for promotions to inspector positions. Id., ¶ 17.

For example, in August 2007, plaintiffs note that then Chief of Police Heather Fong abandoned the Q-35 list, and instead promoted officers from the Q-50 sergeant eligibles list to Assistant Inspector positions. See Mot. Cert. Br. at 2:10-12; Declaration of Alice Villagomez ISO Class Cert Opp. ("Villagomez Decl."), ¶ 3. Plaintiffs charge that, in September 2008, Chief Fong made additional appointments from the Q-50 Sergeant eligibles list instead of from the Q-35 eligibility list, and assigned at least two appointments to inspector positions. See Mot. Cert. Br. at 3:3-6; Declaration of Michael Sorgen ISO Class Cert. ("Sorgen Decl."), Ex. 3. And in October 2009, following a "reorganization" of

SFPD announced by new Police Chief George Gascon, plaintiffs contend that once again, appointments were made from the Q-50 sergeant eligibles list to positions traditionally performed by Assistant Inspectors. See Mot. Cert. Br. at 4:7-15. Plaintiffs allege that on all three occasions, they were passed over for assistant inspector positions in favor of less qualified, less experienced, and younger applicants. See Amended Complaint, ¶ 17.

Plaintiffs allege that defendant's denial of promotion opportunities to them reflects the City's 2006 implementation of a policy and practice of promoting younger, less qualified officers to the investigations bureau, passing over older officers. Id., ¶ 19. This policy and practice has resulted in age-based earnings disparities in the SFPD. Plaintiffs allege that the City has intentionally implemented this policy and practice in order to promote and train younger officers at the expense of older, more qualified officers, and that even if facially neutral, the City's policies and practices have an adverse impact on the promotional and compensation opportunities of older officers. Id., ¶ 20.

Based on the foregoing, plaintiffs assert two claims for relief against defendant: (1) an Age Discrimination in Employment Act ("ADEA") violation under 42 U.S.C. § 64 *et seq.* alleging that the City "has engaged in an intentional and continuing police department-wide pattern or practice of discrimination against older officers" by implementing policies that are "discriminatory, subjective, and/or arbitrary"; and (2) a California Fair Employment and Housing Act ("FEHA") violation under California Government Code § 12940 *et seq.,* alleging the same operative facts as the federal claim. Plaintiffs seek relief in the form of declaratory and injunctive relief, back pay, damages, and incurred costs. See generally Amended Complaint.

Plaintiffs now move for class certification pursuant to Federal Rule of Civil Procedure 23 ("Rule 23"). Defendant has also filed evidentiary objections.[1]

---

[1] Having reviewed defendant's evidentiary objections, the court hereby OVERRULES them.

3

**DISCUSSION**

A.      Legal Standard

In order for a class action to be certified, plaintiffs must prove that they meet the requirements of Federal Rule of Civil Procedure 23(a) and (b).  As a threshold to class certification, plaintiffs must satisfy four prerequisites under Rule 23(a).  First, the class must be so numerous that joinder of all members individually is "impracticable."  See Fed. R. Civ. P. 23(a)(1).  Second, there must be questions of law or fact common to the class.  Fed. R. Civ. P. 23(a)(2).  Third, the claims or defenses of the class representative must be typical of the claims or defenses of the class.  Fed. R. Civ. P. 23(a)(3).  And fourth, the person representing the class must be able to protect fairly and adequately the interests of all members of the class.  Fed. R. Civ. P. 23(a)(4).  The parties moving for class certification bear the burden of establishing that the Rule 23(a) requirements are satisfied.  Gen'l Tel. Co. of Southwest v. Falcon, 457 U.S. 147, 156 (1982); see also Dukes v. Wal-Mart Stores, Inc., 603 F.3d 571, 581 (9th Cir. 2010).

If all four prerequisites of Rule 23(a) are satisfied, the court then determines whether to certify the class under one of the three subsections of Rule 23(b), pursuant to which named plaintiffs must establish that either 1) there is a risk of substantial prejudice from separate actions; or 2) declaratory or injunctive relief benefitting the class as a whole would be appropriate; or 3) common questions of law or fact common to the class predominate and that a class action is superior to other methods available for adjudicating the controversy at issue.  See Fed. R. Civ. P. 23(b)(3).

The court does not make a preliminary inquiry into the merits of plaintiffs' claims in determining whether to certify a class.  See Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 177 (1974).  It will, however, scrutinize plaintiffs' legal causes of action to determine whether they are suitable for resolution on a class wide basis.  See, e.g., Moore v. Hughes Helicopters, Inc., 708 F.2d 475, 480 (9th Cir. 1983).  Making such a determination "will sometimes require examining issues that overlap with the merits." Dukes, 603 F.3d at 587

1  ("the court must consider evidence relating to the merits if such evidence also goes to the
2  requirements of Rule 23").  The court will consider matters beyond the pleadings, if
3  necessary, in order to ascertain whether the asserted claims or defenses are susceptible of
4  resolution on a class wide basis.  See id. at 589; see also McCarthy v. Kleindienst, 741
5  F.2d 1406, 1419 n.8 (D.C. Cir. 1984).

B.   Legal Analysis

Plaintiffs seek class certification in connection with their FEHA claim only, pursuant to Rule 23(a) and (b)(3).[2]  Plaintiffs specifically seek to certify a class that includes:  "all officers who were on the Q-35 list and were aged forty or above as of the dates of the challenged promotions (August 25, 2007; September 22, 2008; and November 14, 2009)."  See Mot. Class Cert. a. 10:6-9.  Plaintiffs assert that the City's decision to promote from the Q-50 sergeant eligibles list rather than the Q-35 assistant inspector eligibles list on each of three occasions from 2007 to 2009, had an unlawful adverse impact on officers over the age of forty who were on the Q-35 list.

As a preliminary matter, the court notes that plaintiffs' FEHA claim is premised solely on a theory of disparate impact age discrimination.  Generally, a claim of disparate impact challenges "employment practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another and cannot be justified by business necessity."  See Int'l Brotherhood of Teamsters v. United States, 431 U.S. 324, 335 n. 15 (1977).  In order to establish a prima facie case of disparate impact discrimination, a plaintiff must:  (1) identify the specific employment practices or selection criteria being challenged; (2) show disparate impact; and (3) prove causation; "that is, the plaintiff must offer statistical evidence of a kind and degree sufficient to show that the practice in question has caused the exclusion of applicants for jobs or promotions because of their membership in a protected group."  Rose v. Wells Fargo & Co., 902 F.2d 1417,

---

[2]   It should be noted that the amended complaint alleges that plaintiffs' class action has also been brought pursuant to Rule 23(b)(2).  See Amended Complaint, ¶ 10.

5

1424 (9th Cir. 1990). The statistical disparities "must be sufficiently substantial that they raise such an inference of causation." Id. The "significance" or "substantiality" of numerical disparities is also generally judged on a case by case basis. Id.

With this in mind, the court turns to its analysis of plaintiffs' requisite showing under Rule 23(a) and 23(b), respectively.

1. Rule 23(a) Showing

As noted above, plaintiffs must first demonstrate that they have satisfied the requirements for class certification under Rule 23(a), which requires a showing as to the following four elements: numerosity, commonality, typicality, and adequacy. As the Ninth Circuit recently reiterated, district courts considering class certification motions "are not only at liberty to, but must, perform a rigorous analysis to ensure that the prerequisites of Rule 23(a) have been satisfied." See Dukes, 603 F.3d at 581. The Ninth Circuit in Dukes also made clear that a district court is permitted to examine evidence supporting the merits of the case, to the limited extent the court's examination of such evidence is necessary to determine whether Rule 23(a) factors have been met.

   a.   numerosity

Rule 23(a)(1) requires that a class be so numerous that joinder of all members is impracticable. In order to satisfy this requirement, plaintiffs need not state the "exact" number of potential class members, nor is there a specific number that is required. See In re Rubber Chems. Antitrust Litig., 232 F.R.D. 346, 350-51 (N.D. Cal. 2005). Rather, the specific facts of each case must be examined. In re Beer Distrib. Antitrust Litig., 188 F.R.D. at 561 (citing General Tel. Co. v. EEOC, 446 U.S. 318, 330 (1980)). While the ultimate issue in evaluating this factor is whether the class is too large to make joinder practicable, courts generally find that the numerosity factor is satisfied if the class comprises 40 or more members, and will find that it has not been satisfied when the class comprises 21 or fewer. See, e.g., Consolidated Rail Corp. v. Town of Hyde Park, 47 F.3d 473, 483 (2d Cir. 1995); Ansari v. New York Univ., 179 F.R.D. 112, 114 (S.D.N.Y. 1998).

6

Plaintiffs here contend that numerosity is satisfied because the potential class – consisting of officers listed on the Q-35 assistant inspector eligibles list who were not promoted – numbers approximately 130 officers. As an initial matter, plaintiffs concede at the outset that it would be impossible to determine which specific class members would have been promoted had appointments been made from the Q-35 list instead of the Q-50 sergeants eligibles list. Thus, they contend that the proper approach is to assume that every officer who would have been selected for promotion would have been selected according to the ranked order set forth in the Q-35 eligibles list (i.e., based on highest rank score). Plaintiffs also assume that those officers who were "reachable" for promotion on the list were those whose rank numbers fell within an 84 point spread. Thus, assuming that the officers who could have been promoted were those on the Q-35 list within a particular 84 point spread (or "band") in descending rank order, and assuming further that this band would have slid further and further down as promotions would have been made from the list on each occasion in 2007, 2008 and 2009, and finally applying this assumption to the City's records regarding the Q-35 list, plaintiffs have determined that every officer ranked above spot 390 on the Q-35 list was qualified for appointment to a promotion with the Investigative Bureau. This corresponds with approximately 130 class members.

Defendant objects to this numerosity showing, primarily on grounds that plaintiffs' number is inflated. Defendant argues, based on the testimony of its economics expert, Dr. Christopher Haan, that plaintiffs never identify which officer had the highest remaining score on the Q-35 list as of August 25, 2007 (i.e., the date Chief Fong made the first set of Q-50 sergeant promotions at the alleged expense of Q-35 selections). Thus, they never explain the basis for their calculation. Moreover, Dr. Haan reviewed the list in question and determined that the highest ranking officer as of August 2007 would have been an Officer Keeve, with a score of 766. According to Dr. Haan's testimony, Officer Keeve appears to have been passed over numerous times for a promotion, making it unlikely he would ever

7

1  be promoted, and making his 766 score a continual set point for the 84 point band.[3] And
2  applying an 84 point spread to Officer Keeve's score, there would have been 145 officers
3  on the Q-35 list within the 84 point spread – i.e., 145 officers who were actually "reachable."
4  Of these officers, however, several *were* promoted before August 2007, some retired, and
5  some died. And once these officers are removed from the group of purportedly "reachable"
6  class members, only 10 individuals remain – two of whom are named plaintiffs. See
7  generally Haan Declaration, ¶¶ 4-7. And even if plaintiffs were actually correct that the 84
8  point band would have slid down each time promotions were made, and that Officer Keeve
9  would have been promoted, defendant places the number of reachable officers at
10 approximately 75. A class between 10 and 75 is far too little to support class certification,
11 concludes the City.

12 Defendant's objections highlight the conclusory, and vague nature of plaintiffs' initial
13 showing. Plaintiffs have essentially reiterated a series of assumptions they make about
14 who would have been promoted from the Q-35 list, and then conclude that this group
15 equals approximately 130 reachable officers. Nonetheless, the court ultimately finds the
16 numerosity factor satisfied. Plaintiffs' reply includes the declaration of their own attorney,
17 Ryan Hicks, explaining the methodology used in and the assumptions made in arriving at a
18 class of 133. See generally Hicks Reply Decl. More importantly, however, defendant itself
19 has acknowledged that even under plaintiffs' approach, the class could number up to 75.
20 See Class Cert Opp. Br. at 15:20. This is sufficient to satisfy the 40-person benchmark
21 generally used to determine numerosity.

---

[3] Shortly before the hearing on this matter, defendant filed a motion for administrative relief, requesting leave to file additional evidence in opposition to plaintiffs' motion for class certification. Defendant specifically seeks to introduce a Declaration of Heather Fong, and an order granting summary judgment in an unrelated case. Both pieces of evidence purportedly address plaintiffs' numerosity contentions, and demonstrate that Officer Keeve was in fact not promotable. The court hereby DENIES defendant's request to introduce the additional evidence. The request is untimely, and is furthermore prejudicial to plaintiff, as it was filed a mere six days before the hearing on this matter. Even if the court were to grant the motion, however, it would not find that the evidence materially changes the analysis as set forth herein.

8

Thus, the court finds that numerosity has, on balance, been satisfied.

    b.   commonality

Whether plaintiffs' have satisfied commonality is at the heart of the parties' dispute here. Commonality requires that there must be questions of law or fact common to the class. Fed. R. Civ. P. 23(a)(2). The commonality requirement of Rule 23(a)(2) has generally been construed permissively. See Dukes, 603 F.3d at 600; Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir. 1998). To satisfy the minimal requirements of Rule 23(a)(2), "[t]he existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." Staton v. Boeing Co., 327 F.3d 938, 953 (9th Cir. 2003). "Where the circumstances of each particular class member vary but retain a common core of factual or legal issues with the rest of the class, commonality exists." Parra v. Bashas', Inc., 536 F.3d 975, 978-79 (9th Cir. 2008). As Dukes now highlights, the purpose of the district court's inquiry at this stage remains focused on common questions of law or fact under Rule 23(a)(2) – not the proof of answers to those questions or the likelihood of success on the merits. See Dukes, 603 F.3d at 590.

Plaintiffs here contend that commonality is satisfied because of the existence of the following common question of fact among all class members: "whether the City's employment practice of promoting exclusively from the [Q-50] sergeants list to investigative positions traditionally performed by [Q-35] Assistant Inspectors and refusing to make any of the appointments from the active [Q-35 list], had a disparate impact on qualified applicants for the investigative positions who were aged forty or above at the time of those appointments." See Mot. Class Cert. at 13:3-9. As is typical in a disparate impact case, plaintiffs' support for the contention that the foregoing is a common question of fact (or law) among class members is primarily grounded in statistical evidence. See Dukes, 603 F.3d at 603-04 ("It is well established that plaintiffs may demonstrate commonality by presenting statistical evidence, which survives a 'rigorous analysis,' sufficient to fairly raise a common

9

question concerning whether there is class-wide discrimination"); see also Stastny v. S. Bell Tel. & Tel. Co., 628 F.2d 267, 278 (4th Cir.1980)(recognizing that statistical data showing comparable disparities experienced by protected employees may indicate a policy or practice that commonly affects the class members and raises a common question concerning whether the pattern or practice is discriminatory).

Plaintiffs' statistical evidence here is based on the expert testimony of Everrett P. Harry, a certified public accountant. While portions of Mr. Harry's testimony are difficult to grasp, he testifies: that he was asked to compare "the ages of individuals selected for appointment to investigations positions during 2000-2009 from the pool of 'reachable' individuals on the Q-35 and Q-50 eligible lists;" that officers were deemed eligible based on their scores on the Q-35 or Q-50 examinations, their rank on the eligibles list, and their position within an 84-point selection band; that, to compute the proportion of qualified candidates selected for promotion from 2000-2006, he first categorized "reachable" individuals on the Q35 eligible list by age and appointment status (excluding those who had died, retired, or already been promoted); that, to compute the proportion of qualified candidates from 2007 to 2009, he included the "reachable" individuals on the Q-35 and Q-50 eligible lists; that he considered the ratio of two percentage numbers (one reflecting the number of officers over the age of 40 and one reflecting the number under the age of 40) among the pool of "all qualified individuals" appointed, and compared this ratio to a second ratio of two percentage numbers (again, one reflecting the number of officers over the age of 40 and one reflecting the number under the age of 40), but this time among the pool of Q-35 appointments only; and that these ratio comparisons demonstrated that "markedly more individuals under the age of 40" prior to 2006 were appointed than expected; thereby indicating that the difference in appointee age distributions for the post-2006 period could only be due to chance "less than .1% of the time." See Harry Decl., ¶¶ 3-6.

This statistical evidence, combined with several excerpts from the deposition testimony of Assistant Chief Tabak, to the effect that Q-35 eligible listed officers were

qualified to do the work of those assigned "to the officers in 2007-09;" that sergeants performed the same work traditionally done by Assistant Inspectors; and that a rank on a Q-35 exam was a good indication of an officer's ability to become an effective inspector, form the totality of all the evidence offered by plaintiffs in support of their commonality showing.

Defendant makes numerous objections to plaintiffs' statistical evidence. Highlights of defendant's objections include: that plaintiffs have failed to identify a specific employment practice with a disparate impact on the basis of age, since the purported decision to abandon the 1998 Q-35 list did not treat those on the list over 40 any more harshly than those under 40, but rather affected everyone equally; that the fact that most remaining eligibles on the Q-35 list are over 40 is a product of the age of the list, and cannot establish a disparate impact claim; that all on the list were qualified to take the 2006 Q-50 examination that would enable promotion to investigative positions, which some did and some did not; that plaintiffs' use of a pool composed of both Q-35 eligibles and Q-50 eligibles as a basis for comparison is flawed and deficient; that plaintiffs' methodology does not take into account major variables that might demonstrate the nondiscriminatory effect of the City's practices (e.g., what factors were used to promote from the list aside from mere rank); and that plaintiffs' methodology is fatally deficient in the manner in which it calculates who was reachable for promotion, its failure to adequately explain methodology, and failure to utilize accepted methodology for determining disparate impact. Defendant once again offers up the declaration of Dr. Haan, an econometrics expert, to explain the fallacies in plaintiffs' statistical showing. See Haan Decl., ¶¶ 8-23.

Defendant's objections are meritorious, particularly those going to the validity of plaintiffs' statistical evidence. To begin with, although statistical analysis is the commonly used model through which to show disparate impact, plaintiffs' expert is a CPA who makes no attempt to root his testimony in any well-accepted analytical methodology. Indeed, Mr. Harry's purported methodology is not supported by any references to authoritative citation,

let alone any definitive analytical source.  This failure is particularly problematic because Mr. Harry's declaration lacks clarity, and fails to set forth in detail the assumptions that underlie his conclusions.  This fact only highlights the necessity for a clear explanation of methodology.

More significantly, however, and turning to the substance of Mr. Harry's analysis, there are two major deficiencies contained within plaintiffs' statistical evidence.  First, and as defendant points out in its arguments, it is not clear that plaintiffs have started with the right comparison pools to begin with.  Generally, in showing disparate impact, the "proper comparison [is] between the [age] composition of [the at-issue jobs] and the [age] composition of the qualified ... population in the relevant labor market." Sanchez v. City of Santa Ana, 928 F. Supp. 1494, 1500 (C.D. Cal. 1995).  In cases where such labor market statistics are difficult if not impossible to ascertain, like here, disparate impact can also be shown by "measures indicating the [age] composition of 'otherwise-qualified applicants' for at-issue jobs." Id.; see also Garcia v. Spun Steak Co., 998 F.2d 1480, 1486 (9th Cir. 1993) ("plaintiff proves discriminatory impact by showing statistical disparities between the number of protected class members in the qualified applicant group and those in the relevant segment of the workforce").

Here, it is difficult to clearly decipher the comparison pools used by plaintiffs. According to Mr. Harry's declaration, it would appear that plaintiffs have compared those appointed to investigative positions from the Q-35 eligibles list before 2006; and those appointed to investigative positions from both the Q-35 and Q-50 eligibles list after 2006. However, in plaintiffs' motion papers, plaintiffs contend they have compared the ages of "those appointed to investigative positions from the Q-50 list in 2007-09" to the ages of "all officers on the Q-50 and Q-35 lists who were 'reachable' for selection on each appointment date." See Mot. Class Cert. at 6:19-22.  Then, on the very next page, plaintiffs again re-characterize the two groups to be compared as "otherwise-qualified" officers under the age of forty at the time of a challenged appointment, and "otherwise-qualified" officers over the

12

age of forty on the date of a challenged appointment. Id. at 6:9-12. These conflicting characterizations of the relevant comparison pools make it difficult, if not impossible, for the court to correctly assess the probative value of plaintiffs' statistical analysis.

The second major deficiency is the failure of Mr. Harry's analysis to adequately account for and explain away any alternative variables that could interfere with any inference of discrimination. As defendant notes, examples of likely variables in this case include: examination scores, job performance, seniority, experience and/or education of the various officers on the Q-35 eligibility list – all of which might have had an impact on the City's decision to promote certain applicants from the eligibles list over other applicants. Plaintiffs, however, submit no evidence or analysis that would allow for an explanation of these variables, and that would, as a result, allow for a legitimate inference of discrimination based on age to be made.

As the Dukes court recently noted in a footnote contained within their discussion on the sufficiency of statistical evidence generally, see Dukes, 603 F.3d at 604 fn. 26, this is precisely why the court might normally expect to see a regression analysis: "[r]egression analyses, in general terms, provide estimates of the effect of independent variables on a single dependent variable. The purpose of this methodology is to estimate the extent to which a particular independent variable (in this case, gender) has influenced the dependent variables of compensation and promotion... As long as the analyses include enough relevant non-discriminatory independent variables (e.g., education, experience, performance, etc.), the results will indicate whether any salary disparities are attributable to gender (thereby raising an inference of discrimination) or whether the disparities are attributable to other factors (and thereby refuting such an inference)." This is not the case here, to plaintiffs' great disadvantage.

In short, the foregoing problems with plaintiffs' comparison pools and in connection with plaintiffs' methodology generally, render plaintiffs' statistical showing as a whole, deficient. See, e.g., Watson v. Fort Worth Bank and Trust, 487 U.S. 977 (1988)(noting as a

13

deficiency in disparate impact cases small or incomplete data sets and inadequate statistical techniques"); see also Carter v. CB Richard Ellis, 122 Cal. App. 4th 1313, 1324-25 (2005). Plaintiffs' evidence therefore fails to preliminarily establish a prima facie case of disparate impact discrimination.

As such, plaintiffs have not come forward with sufficient evidence to suggest that there is a common question regarding whether the City's purported employment policy caused a disparate impact among the putative plaintiff class. The court accordingly finds commonality lacking.

While this finding alone would justify a denial of class certification, the court nonetheless includes a brief analysis of the remaining Rule 23(a) factors.

### c.     typicality

The third requirement under Rule 23(a) is that the claims or defenses of the class representatives must be typical of the claims or defenses of the class. Fed. R. Civ. P. 23(a)(3). Typicality exists if the named plaintiffs' claims are "reasonably coextensive" with those of absent class members. Staton, 327 F.3d at 957. To be considered typical for purposes of class certification, the named plaintiff need not have suffered an identical wrong. Id. Rather, the class representative must be part of the class and possess the same interest and suffer the same injury as the class members. See Falcon, 457 U.S. at 156.

"The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." Hanon, 976 F.2d at 508 (citation omitted). According to the Ninth Circuit, "[t]ypicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought." Id. (quotation omitted). "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." Id. (internal quotation marks omitted); see also Armstrong v. Davis,

14

275 F.3d 849, 868 (9th Cir. 2001) (typicality is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability); Lightbourn v. County of El Paso, 118 F.3d 421, 426 (5th Cir. 1997) (typicality focuses on the similarity between the named plaintiffs' legal and remedial theories and the legal and remedial theories of those whom they purport to represent). In practice, the commonality and typicality requirements of Rule 23 "tend to merge." Gen'l Tel. Co. Of Southwest, 457 U.S. at 158 n. 13. The Ninth Circuit interprets the typicality requirement permissively. Hanlon, 150 F.3d at 1020.

Here, plaintiffs argue that typicality is met because all the putative class members could have been promoted to one of the challenged investigative positions, as could the named plaintiffs, and because there is no difference among the class members and named plaintiffs regarding the injury they suffered at the hands of the same policy decision to promote exclusively from the Q-50 list. Defendant opposes plaintiffs' argument with the objection that the named representatives and putative class members all suffered injuries based on a mixture of different factors, including: that the named plaintiffs hold different ranks on the 1998 Q-35 list; that Stockwell took the 2006 Q-50 examination, but Ivy, Neeson, and Lewis did not; that all have different work experiences; and that the members of plaintiffs' proposed class includes officers in the ranks of Q-50 and Q-60, but none of the named plaintiffs holds that rank.

On balance, while defendant again makes valid points in opposition to plaintiffs' showing, the court ultimately finds that plaintiffs have satisfied the typicality factor. Defendant's arguments highlight factors that ultimately go to the question whether an individual plaintiff or class member might recover in terms of damages. As noted above, the test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct. And since all plaintiffs were on the Q-35 list and aged over 40, and since all are claiming injury based on their age

as a result of the same course of conduct employed by the City (i.e., in abandoning promotions from the Q-35 list), plaintiffs all generally are alleging similar injuries stemming from the same course of conduct. Thus, defendant does not defeat plaintiffs' typicality showing.

The court accordingly finds this factor satisfied.

   d.  adequacy

The fourth requirement under Rule 23(a) is adequacy of representation. The court must find that named plaintiffs' counsel is adequate, and that named plaintiffs can fairly and adequately protect the interests of the class. To satisfy constitutional due process concerns, unnamed class members must be afforded adequate representation before entry of a judgment which binds them. See Hanlon, 150 F.3d at 1020. Legal adequacy is determined by resolution of two questions: (1) whether named plaintiffs and their counsel have any conflicts with class members; and (2) whether named plaintiffs and their counsel will prosecute the action vigorously on behalf of the class. Id. Generally, representation will be found to be adequate when the attorneys representing the class are qualified and competent, and the class representatives are not disqualified by interests antagonistic to the remainder of the class. Lerwill v. Inflight Motion Pictures, 582 F.2d 507, 512 (9th Cir. 1978).

Here, plaintiffs assert that plaintiffs' counsel has the right qualifications to prosecute this class action, and furthermore that there are no conflicts between the class representatives and the putative class members. Defendant takes no issue with the former, but asserts that there are conflicts present between the named plaintiffs and the class members. Specifically, defendant notes that (a) Stockwell cannot represent the interests of the class because she signed a waiver of her FEHA claim in October 2009; (b) since none of the representatives holds the rank of Q-50 or Q-60, they cannot represent class members who do hold that rank; (c) only individual plaintiff Jehl was reachable on the Q-35 list as of August 2007 and all the rest fall outside the 84-point band that would have

determined reachability; (d) the named plaintiffs are not equally qualified for assignment to the Investigations Bureau since they all have different qualifications, performance histories, and experience; and (e) there are conflicts among the named plaintiffs and class members in establishing damages.

Preliminarily, defendant's objections go only to the existence of conflicts between the named class members and putative members of the class. Thus, and since there are no objections to the adequacy of class counsel, this adequacy prong is satisfied. As for the conflict issue at which defendant's objections are aimed, points (b), (c), and (d) are all iterations of the arguments already made by defendant in connection with the typicality element. For the same reasons the court rejected defendant's arguments in connection with plaintiffs' typicality showing, the court also rejects them here. As for point (a) – i.e., whether Stockwell can represent the interests of the class – plaintiffs concede that Stockwell has waived her FEHA claims, but only for 2007 and 2008 appointments. Thus, Stockwell is prohibited from acting as a named class representative in connection with the 2007 and 2008 appointments. However, Stockwell is permitted to act as a named class representative in relation to the 2009 appointments made by the SFPD.

This leaves for resolution the issue whether there are conflicts between the named plaintiffs and the putative class members with respect to damages. Defendant generally relies on the fact that, even by plaintiffs' own admission, there are only 55 appointment positions that came up during the time periods in question and were assigned to Q-50 eligibles, which purportedly led to plaintiffs on the Q-35 list being overlooked for appointment on the basis of age. However, defendant points out that plaintiffs' class consists of 130 members. Thus, there will be a conflict in terms of awarding damages among these members, since only 55 could conceivably have suffered any damages.

This is an interesting point. However, the court ultimately finds that this observation speaks less to the existence of a true conflict between the representative plaintiffs and the putative class members, and more to the scope of damages that would ultimately be

awarded to any worthy class member. As such, it does not demonstrate that the named plaintiffs' interests are fundamentally at odds with the class members', such that they could not adequately represent the class.

On balance, therefore, the court finds that the adequacy factor has been satisfied, although named plaintiff Stockwell's representation is limited to claims in connection with the 2009 appointments only.

* * *

In sum, the court concludes that, while plaintiffs might ultimately be able to satisfy the elements of numerosity, typicality, and adequacy, they have not satisfied commonality. Thus, certification must be DENIED, for failure to satisfy all Rule 23(a) factors.

2. Plaintiffs' Rule 23(b)(3) Showing

Although class certification is denied for failure to satisfy Rule 23(a), a brief analysis regarding Rule 23(b) is in order. Plaintiffs seek certification pursuant to Rule 23(b)(3), which requires plaintiffs to establish that questions of law or fact common to the class predominate, and that a class action is superior to other methods available for adjudicating the controversy at issue. See Fed. R. Civ. P. 23(b)(3). The Dukes court recently noted: "predominance... tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation,.. a standard far more demanding than the commonality requirement of Rule 23(a)." See Dukes, 603 F.3d at 593. Thus, continued the court, "we would expect that cases in which the parties are contesting facts underlying the Rule 23(b)(3) determination may often require more determinations by the district court than those in which Rule 23(a)(2) is the primarily contested issue." See id. ("We thus should not be surprised that a district court will have to make more precise factual determinations under Rule 23(b)(3) than under Rule 23(a)(2)").

Here, plaintiffs' Rule 23(b) showing falters from the start, as they have not provided the court with an opportunity to make any determinations requiring plaintiffs' predominance showing. Plaintiffs' papers do not undertake any sort of demonstration regarding the

18

existence of any common questions of law or fact that predominate over individual issues. Rather, plaintiffs simply make broad sweeping and conclusory arguments about the impossibility of going "back in time" and making subjective determinations about what "would or should have happened nearly three years ago," and then go on to remark that there is no unrelated and outstanding litigation between the parties raising the same claims and issues. See Mot. Class Cert. at 14-15. As an effort to satisfy the predominance factor, this argument falls woefully short of the mark. Based on it, the court has no foundation upon which to undertake a predominance analysis, let alone conclude that predominance has been satisfied. Thus, on this ground alone, plaintiffs' 23(b)(3) showing fails.

      Even if it didn't fail because of the foregoing, however, plaintiffs would find trouble establishing the 'superiority' of class action treatment in this instance. For as defendant notes in its opposition, even certification of a class under FEHA would still leave the court with thirty-nine (the four representative plaintiffs plus the 35 individual named plaintiffs) individual ADEA claims to adjudicate. Assuming, for example, a plaintiff class comprising 75 reachable officers, this number represents over half of the class with individual claims not subject to class treatment. Thus, certification hardly streamlines the issues to be litigated at trial. And while plaintiffs' counsel suggested at the hearing that in the event certification were granted, plaintiffs would consider dismissing the ADEA claim from the action entirely, a suggestion of a future dismissal does nothing to address the claims *currently* at issue and upon which the court is required to base its decision. Furthermore, it also appears that, to the extent plaintiffs have premised their class on the inclusion of class members all the through rank number 390 on the Q-35 eligibles list, there are 9 individual plaintiffs who are ranked below 390 on the Q-35 list, and whose claims even under FEHA would still need to be adjudicated individually. All of which collectively suggests that allowing this action to go forward as a class action is not necessarily the superior method in this case, since the court already is facing a trial as to multiple claims and parties on some of the very same issues that plaintiffs seek to certify.

In sum, the court concludes that plaintiffs have failed to satisfy both the predominance and superiority elements contemplated by Rule 23(b)(3).

C.  Conclusion

Accordingly, and for all the foregoing reasons, the court DENIES plaintiffs' motion for class certification, due to plaintiffs' failure to establish the requisite elements pursuant to both Rule 23(a), and Rule 23(b)(3).

As ordered on April 7, 2010, the parties shall meet and confer and within 14 days of the date of this order, submit a stipulation with respect to discovery and dispositive motions deadlines, or else request a further case management conference to discuss future proceedings.

**IT IS SO ORDERED.**

Dated: August 27, 2010

_____
PHYLLIS J. HAMILTON
United States District Judge